# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# AT MEMPHIS

| | |
|---|---|
| OUTMEMPHIS; JANE DOE #1; JANE DOE #2; JANE DOE #3; and JANE DOE #4;<br><br>    Plaintiffs,<br><br>v.<br><br>BILL LEE, in his official capacity as Governor of Tennessee; JONATHAN SKRMETTI, in his official capacity as Attorney General and Reporter of Tennessee; DAVID RAUSCH, in his official capacity as Director of the Tennessee Bureau of Investigation; and FRANK STRADA, in his official capacity as Commissioner of the Tennessee Department of Correction;<br><br>    Defendants. | Case No. 2:23-cv-02670<br><br>Chief Judge Lipman<br><br>Magistrate Judge Claxton |

## REPORT OF THE PARTIES' DISCOVERY PLANNING MEETING

The following persons participated in a Rule 26(f) conference on November 21, 2023, via Teams videoconference:

- Cody N. Brandon, John R. Glover, and David M. Rudolph as counsel for Defendants;
- Rachel Meeropol, Alexis Agathocleous, Alexis Alvarez, Jeff Preptit, and Milo Inglehart as counsel for Plaintiffs;

to discuss the following topics of information and formulate a plan for discovery in this case.

**I.** **Initial Disclosures.** The parties plan to complete the initial disclosures required by Rule 26(a)(1) by January 12, 2024.

1

**II.    Discovery Plan.** Through a series of productive meetings and email exchanges, the parties were able to come to agreement on general discovery deadlines. That discovery plan is reflected in the proposed case management order submitted to the Court by counsel for Defendants contemporaneously with this Report and is ultimately subject to the case management order entered by the Court.  However, the parties disagree on one aspect of the discovery plan regarding resolution of the ADA claims in this matter. Accordingly, Plaintiffs are likewise contemporaneously submitting a proposed case management order to the Court which reflects their preferred schedule.  Each party's individual position on that discrete matter is set forth below in (VII).

1) Discovery is anticipated on the following topics:

a) The identities of Jane Does #1-4[1] and information regarding their criminal convictions and *their history of compliance while on the sex offender registry*;[2]

b) Expert testimony regarding HIV/AIDS and other comparable infectious diseases, including history, virality, transmissibility, and treatments;

c) Expert testimony regarding the utility and public health consequences of HIV criminalization and imposition of Tennessee's Sex Offender Registry for individuals convicted of Aggravated Prostitution;

---

[1] To facilitate this discovery, the parties have met and conferred on three occasions—November 13; November 21; and December 4, 2023—and are close to agreement on an unopposed temporary protective order, which, upon entry by the Court, should allow Jane Does 1-4 to safely disclose their true identities to Defendants and, in turn, allow Defendants to formulate a position on Plaintiffs' planned motion for leave to proceed using pseudonyms. The parties anticipate that motion and an accompanying proposed permanent protective order will be submitted to the Court shortly.

[2] Plaintiffs disagree that the italicized issue is a relevant or proper issue for discovery here.

d) Expert testimony regarding the particular vulnerabilities of individuals engaged in sex work and individuals living with HIV;

e) Standing of Plaintiffs to challenge the laws at issue in their complaint;

f) Enforcement of Tennessee's Aggravated Prostitution and sex offender registration statutes.

2) Discovery Schedule

a) Should the Court order Defendants' proposed discovery schedule, written discovery, with the exception of requests for admission, shall be served no later than July 12, 2024. Should the Court order Plaintiffs' proposed discovery schedule, written discovery, with the exception of requests for admission, shall be served no later than October 31, 2024. Requests for admission shall be served no later than April 15, 2025. To the extent necessary, the parties shall timely supplement responses to written discovery by November 15, 2025.

b) Depositions of fact witnesses shall be completed no later than January 15, 2025. Counsel for the parties shall meet and confer no later than October 15, 2024, to discuss potential witnesses for depositions, anticipated objections, and a rough calendar for conducting depositions.

c) Plaintiffs shall disclose all testifying expert witnesses and reports no later than March 14, 2025. Defendants shall disclose all testifying expert witnesses and reports no later than April 14, 2025. Depositions of expert witnesses shall be completed no later than June 14, 2025.

3) Plaintiffs shall issue no more than 30 interrogatories, collectively, to Defendants, absent agreement of the parties or leave of court. Defendants shall issue no more than

    30 interrogatories, collectively, to Plaintiffs, absent agreement of the parties or leave of court.

4) Plaintiffs shall issue no more than 25 requests for admission, collectively, to Defendants, absent agreement of the parties or leave of court. Defendants shall issue no more than 25 requests for admission, collectively, to Plaintiffs, absent agreement of the parties or leave of court.

5) Plaintiffs shall not depose more than 8 fact witnesses, collectively, absent agreement of the parties or leave of court. Defendants shall not depose more than 8 fact witnesses, collectively, absent agreement of the parties or leave of court. For purposes of this limitation, a deposition under Fed. R. Civ. P. 30(b)(6) will count as a single witness. This limitation does not apply to depositions of expert witnesses.

### III. Motions.

1) Any motion to amend pleadings or to join parties shall be made no later than April 1, 2024.

2) Dispositive motions shall be filed no later than September 12, 2025.

3) Motions to exclude experts (*Daubert* motions) shall be filed no later than July 26, 2025.

### IV. Settlement and ADR.

The parties have met and conferred and agree the case is not suited for ADR. Plaintiffs challenge the legality and constitutionality of State law, rendering mediation almost certain to be fruitless.

### V. Consent to a Magistrate Judge

The parties have met and conferred, and neither desire to consent to all further proceedings in the case being handled by the magistrate judge in accordance with 28 U.S.C. 636(c).

**VI.  Pre-trial Deadlines.**

1) The parties request a trial date no earlier than January 5, 2026.

2) The parties shall exchange but not file (1) copies of exhibits, (2) witness lists, and (3) designations of portions of depositions that are to be read into evidence during trial no later than three weeks before the trial date.  The authenticity of exhibits should be stipulated to if at all possible.  The parties should attempt to agree on additions to designations of depositions testimony necessary to put responses in context.

3) The parties shall submit a joint proposed pretrial order in Word format to ECF_Judge_Lipman@tnwd.uscourts.gov no later than two weeks before the trial date. The proposed order shall contain: (1) a statement of the basis for jurisdiction in this Court; (2) a short summary of the Plaintiffs' theory (no more than one page); (3) a short summary of Defendants' theory (no more than one page); (5) a statement of the issues, including a designation of which issues are for the jury and which are for the Court; (6) a succinct statement of the relief sought; (7) a summary of any anticipated evidentiary disputes; and (8) an estimate of the anticipated length of the trial.

4) The parties request a pretrial conference be set approximately one week before trial.

5) The parties shall file motions in limine no later than two weeks before the trial date.

**VII.  Discovery Regarding Plaintiff's ADA Claims**

The Parties disagree regarding the need for front-loading discovery on Plaintiff's ADA claims.  Those positions are set forth below.

**A.  Plaintiffs' Proposed Discovery Plan**

Plaintiffs anticipate that their four constitutional claims (Eighth Amendment, equal protection, substantive due process, and ex post facto) will require a relatively limited amount of

5

fact discovery but significant expert discovery (likely five to seven experts). Plaintiffs expect this fact and expert discovery to require approximately nine months to complete.

However, Plaintiffs' Americans with Disabilities Act (ADA) claims (Counts I and IV)—which contemplate all the relief that Plaintiffs seek—constitute a straight-forward facial challenge to the Aggravated Prostitution statute and its inclusion in the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification, and Tracking Act of 2004, Tenn. Code Ann. §§ 40-39-201 to 40-39-218 ("TN-SORA"). These purely legal claims are appropriate for summary disposition, and in the interests of efficiency and judicial economy, Plaintiffs propose that these claims be addressed as expeditiously as possible, potentially resolving this matter without the need for time and resource-intensive discovery.

A brief explanation of Plaintiffs' ADA claim will help illuminate their position. Under Title II of the ADA, "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. In ADA cases, a plaintiff must demonstrate that discrimination by reason of disability is a "but-for" cause of the challenged conduct. Plaintiffs' claims are simple: but for their HIV status, a protected disability, they could not have been convicted of Aggravated Prostitution and would not be registered as sex offenders. None of the elements of Plaintiffs' ADA claims require factual development:

- Defendants represent public entities subject to the ADA as clearly defined by the ADA itself. *See* 42 U.S.C. § 12131(1)(A)-(B).
- It is well-established that HIV is a qualified disability under the ADA. *See*, *e.g.*, *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998).

6

- Knowledge that one is living with HIV is an element of Aggravated Prostitution. T.C.A. § 39-13-516. Thus, the text of the Aggravated Prostitution statute establishes that, but for their HIV-positive status, Jane Does 1-4 could not have been convicted.

- The text of TN-SORA confirms that an Aggravated Prostitution conviction automatically results in registration as a sex offender. T.C.A. §§ 40-39-202(20), (31).

- As public records generated, maintained, and placed on a public website by Defendants establish, Jane Does 1-4 are currently subject to TN-SORA's sex offender registration requirements solely due to their Aggravated Prostitution convictions. Otherwise put, but for their HIV status, which has allowed for their convictions, they would not be so registered.

- Even if, as Defendants argue below, the "direct threat defense" applies, it is indisputable that, as a matter of law, this defense requires "an individualized assessment, based on reasonable judgment that relies on current medical knowledge or on the best available objective evidence, to ascertain: the nature, duration, and severity of the risk; the probability that the potential injury will actually occur; and whether reasonable modifications of policies, practices, or procedures or the provision of auxiliary aids or services will mitigate the risk." 28 CFR § 35.139. As the face of the statutes confirm, it is similarly indisputable that neither the Aggravated Prostitution statute nor TN-SORA provide for such an individualized assessment.

Given these indisputable facts, both ADA claims will turn on a purely legal question: can Tennessee impose criminal liability and sex offender registration based on HIV status, a protected

disability? If the answer is no, Plaintiffs will be entitled to relief without the need to litigate their fact-intensive constitutional claims.[3]

However, Plaintiffs acknowledge one potential factual issue related to these claims: organizational standing. Defendants may elect to probe OUTMemphis' allegations of organizational standing based on diversion of resources and frustration of mission. For this reason, Plaintiffs propose an initial three-month discovery period during which Defendants would be free to conduct discovery against OUTMemphis necessary to inform their decision about whether to challenge standing in defense to Counts I and IV of the Complaint.

After the three-month period, Plaintiffs will move for partial summary judgment on the ADA claims and the parties will commence general discovery. Summary judgment for Plaintiffs would obviate the need to complete that discovery, saving the parties and the Court significant time and resources. *See* Fed. R. Civ. P. Rule 1 (instructing that the Federal Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding"). Denial of summary judgment risks little, as the parties would simply continue discovery on the same schedule proposed by Defendants.

Specifically, Plaintiffs propose the following schedule, which fits *within* the general schedule agreed to by Defendants (*see* Parts II-VI):

---

[3] It is worth noting that Plaintiffs are not alone in their view that Tennessee's Aggravated Prostitution and related TN-SORA requirements violate the ADA as a matter of law. Indeed, the United States Department of Justice has reached exactly the same conclusion. *See* Dec. 1, 2023, Letter from Rebecca Bond, Disability Rights Section, Dept. of Justice to AG Skrmetti, et. al, re: The United States' Findings and Conclusions Based on its Investigation of the State of Tennessee and the Shelby County District Attorney General's Office under Title II of the Americans with Disabilities Act, DJ No. 204-70-85, available at https://www.justice.gov/opa/pr/justice-department-finds-enforcement-tennessee-state-law-discriminates-against-people-hiv.

8

**2024**

- Jan. 12: Initial disclosures & eDiscovery disclosures
- Feb. 14 - May 14: Defendants' initial OUTMemphis standing discovery period
- Apr. 1: Motions to Amend Pleadings / Joinder
- June 11: Plaintiffs move for partial summary judgment
- July 9: Defendants oppose partial summary judgment
- July 23: Plaintiffs reply on partial summary judgment
- Sept. 1: GENERAL DISCOVERY PERIOD BEGINS
- Nov. 15: Meet and confer re: fact depositions

**2025**

- Jan. 15: End of fact discovery
- Mar. 14: Plaintiffs disclose experts
- April 14: Defendants disclose experts
- May 14: Rebuttal reports
- June 14: Close of Expert depositions
- July 26: Motions to exclude
- Sept. 12: Dispositive motions
- Dec. 15: Joint Proposed pretrial order

**B. Defendants' Position**

Defendants anticipate that the discovery necessary to defend against all of Plaintiff's claims will substantially, if not entirely, overlap with the discovery necessary to defend against Plaintiff's ADA claims. The ADA claims are not, contrary to Plaintiff's contention, "purely legal claims" that are appropriate for "summary disposition." Defendants' theory of the case requires expert

9

medical proof in order to support the well-established defenses available to defendants to an ADA claim, which are fact- and expert- intensive. Defendants are entitled to pursue those available defenses and intend to do so during a robust discovery period in this case. For example, Defendants may rely on a "direct threat" defense, for which they may require their own expert testimony about whether Plaintiffs are "qualified individuals" under 42 U.S.C. § 12132. *See* 29 C.F.R. § 1630.2(r); 28 C.F.R. § 35.104; *id.* § 35.139; *see Sch. Bd. of Nassau Cty. v. Arline*, 480 U.S. 273, 288 (1987). Moreover, Defendants are entitled to discover the evidence in Plaintiff's possession supporting all of their claims, including the ADA claims, to guide the decisions they make about what defenses to assert. Defendants anticipate not only extensive discovery necessary to defend against the ADA claims, but also, as Plaintiffs actually acknowledge, regarding whether several Plaintiffs have standing. Standing is, obviously, relevant to *all* the claims, not just the ADA ones. Layering all of this into an expedited discovery schedule means there is a substantial likelihood that the parties—and the Court—will be forced to duplicate discovery and summary judgment briefing.

Plaintiffs have presented no compelling justification to expedite their ADA claims apart from the self-serving belief that success on a partial motion for summary judgment motion could resolve the case for *them*. Certainly, Plaintiffs do not intend to *abandon* the remainder of their claims should they *lose* their partial summary judgment motion. There is simply no justification to expedite the discovery in this case based on Plaintiffs' preference to address what they believe is their strongest claim first, a reality only further demonstrated by the fact that Plaintiff has not moved for a preliminary injunction on their ADA claims.

Defendants anticipate both factual and expert discovery will be necessary to defend against Plaintiffs' ADA claims, and that this discovery will mirror the exact discovery necessary to defend

against the remaining claims.  For these reasons, Defendants submit that it is more efficient all around for the parties to conduct all of this discovery at the same time on a conventional schedule.

Respectfully submitted,

JONATHAN SKRMETTI
Attorney General and Reporter

*/s/ Cody N. Brandon*
CODY N. BRANDON (BPR# 037504)
Managing Attorney
Assistant Attorney General

JOHN R. GLOVER (BPR# 037772)
Assistant Attorney General

DAVID RUDOLPH (BPR# 13402)
Senior Assistant Attorney General

Law Enforcement &
Special Prosecutions Division
Office of the Tennessee
Attorney General & Reporter
PO Box 20207
Nashville, TN  37202
Off. (615) 532-2552
Fax (615) 532-4892
Cody.Brandon@ag.tn.gov
John.Glover@ag.tn.gov
David.Rudolph@ag.tn.gov


*/s/ Rachel Meeropol*   (w/perm. CNB)
Rachel Meeropol (NY Bar 4100954)
Alexis Agathocleous (NY Bar 4227062)
Alexis Alvarez (NY Bar 5854278)
Jon W. Davidson (CA Bar 89301)
AMERICAN CIVIL LIBERTIES UNION
125 Broad St., New York, NY 10004
Phone: (929) 585-0061
RMeeropol@aclu.org
AAgathocleous@aclu.org

11

AlexisA@aclu.org
JonDavidson@aclu.org

Stella Yarbrough (BPR No. 033637)
Jeff Preptit (BPR No. 038451)
Lucas Cameron-Vaughn (BPR No. 036284)
ACLU FOUNDATION OF TENNESSEE
P.O. Box 120160
Nashville, TN 37212
Phone: (615) 320-7142
SYarbrough@aclu-tn.rog
JPreptit@aclu-tn.org
Lucas@aclu-tn.org

Lynly S. Egyes (NY Bar 4838025)
Milo Inglehart (NY Bar 5817937)
TRANSGENDER LAW CENTER
594 Dean Street, Suite 11
Brooklyn, NY 11238
Phone: 510 587-9898 Ext. 353
Lynly@transgenderlawcenter.org
Milo@transgenderlawcenter.org

Dale Melchert (NY Bar 5366554)
TRANSGENDER LAW CENTER
P.O. Box 70976
Oakland, CA 94612
Phone: (510) 587-9696 Ext. 354
Dale@transgenderlawcenter.org

**CERTIFICATE OF SERVICE**

      I hereby certify that a true and exact copy of the foregoing was filed and served via the Court's electronic filing system on this the 12th day of December 2023, upon:

Rachel Meeropol (NY Bar 4100954)
Alexis Agathocleous (NY Bar 4227062)
Alexis Alvarez (NY Bar 5854278)
Jon W. Davidson (CA Bar 89301)
AMERICAN CIVIL LIBERTIES UNION
125 Broad St., New York, NY 10004
Phone: (929) 585-0061
RMeeropol@aclu.org
AAgathocleous@aclu.org
AlexisA@aclu.org
JonDavidson@aclu.org

Stella Yarbrough (BPR No. 033637)
Jeff Preptit (BPR No. 038451)
Lucas Cameron-Vaughn (BPR No. 036284)
ACLU FOUNDATION OF TENNESSEE
P.O. Box 120160
Nashville, TN 37212
Phone: (615) 320-7142
SYarbrough@aclu-tn.rog
JPreptit@aclu-tn.org
Lucas@aclu-tn.org

Lynly S. Egyes (NY Bar 4838025)
Milo Inglehart (NY Bar 5817937)
TRANSGENDER LAW CENTER
594 Dean Street, Suite 11
Brooklyn, NY 11238
Phone: 510 587-9898 Ext. 353
Lynly@transgenderlawcenter.org
Milo@transgenderlawcenter.org

Dale Melchert (NY Bar 5366554)
TRANSGENDER LAW CENTER
P.O. Box 70976
Oakland, CA 94612
Phone: (510) 587-9696 Ext. 354
Dale@transgenderlawcenter.org

                                                                 s/ *Cody N. Brandon*
                                                                 CODY N. BRANDON